## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| WILLIAM A. PHILLIPS, | : | | |
|---|---|---|---|
| | : | | |
| Movant/Defendant, | : | Civ. Act. No. | 11-897-LPS |
| | : | Cr. Act. No. | 08-031-LPS |
| v. | : | | |
| | : | Civ. Act. No. | 11-898-LPS |
| UNITED STATES OF AMERICA, | : | Cr. Act. No. | 09-036-LPS |
| | : | | |
| Respondent/Plaintiff. | : | | |

## **MEMORANDUM OPINION**

_____

William A. Phillips. *Pro se* Movant.

Edmond Falgowski, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

_____

August 12, 2014
Wilmington, Delaware

*Lei. De*

**STARK, U.S. District Judge:**

## I. INTRODUCTION[1]

William A. Phillips ("Movant") filed a timely Motion to Vacate, Set Aside, or Correct

Sentence pursuant to 28 U.S.C. § 2255. (D.I. 73; D.I. 79) The United States ("Respondent") filed

an Answer in Opposition. (D.I. 81) For the reasons discussed, the Court will deny Movant's § 2255

Motion without holding an evidentiary hearing.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On or about January 14, 2001, while living in Elkton, Maryland, Movant recorded a

seventeen-minute child pornography video depicting Jane Doe I and Jane Doe II. (D.I. 81 at 2)

Movant used a VHS camera to record them and sometime afterwards re-recorded the video tape to

a compact disk (CD). Movant did not copy his child pornography video of Jane Doe #1 and Jane

Doe #2 to his computer hard drive. *Id.*

On July 30, 2007, a detective from the New Castle County Police Department ("NCCPD")

conducted a child pornography investigation of unknown targets from NCCPD Headquarters using

the "Peer-2-Peer" ("P2P") file sharing network. (D.I. 81 at 2) The detective's search led to

Movant's computer at this New Castle home. (*Id.* at 3) Movant's computer was on the P2P

network, and the detective was able to browse the titles of Movant's shared files, many of which

were indicative of child pornography. While browsing Movant's shared directory, the detective was

---

[1]Movant was originally charged with offenses in two separate criminal cases that originated from the
same set of facts: Cr. A. No. 08-31 and Cr. A. No. 09-26. Although the cases were not consolidated,
Movant signed a single Memorandum of Plea Agreement covering both cases. (D.I. 47) In turn,
the Court conducted one sentencing hearing for both cases (D.I. 67), and the Court of Appeals
issued one appellate decision for both cases, *see Phillips v. United States*, 396 F. App'x 831 (3d Cir.
2010). Thus, although Movant filed two separate but identical § 2255 Motions in his two criminal
cases, this Court will render one decision for both § 2255 Motions and docket the decision in each
case. Unless otherwise stated, all docket index citations are to Criminal Action No. 08-31-LPS.

able to capture the SHA1 hash values (digital fingerprints) associated with known child pornography files. (*Id.*)

On several occasions from July 31, 2007 through September 11, 2007, the detective browsed Movant's shared directory, each time finding that the directory held approximately 200 computer files. (D.I. 81 at 3) Through SHA1 hash values, the detective identified from among those files the digital fingerprints of known child pornography. (*Id.*)

On September 19, 2007, the detective executed a state issued search warrant at Movant's New Castle home. (D.I. 81 at 3) NCCPD officers seized Movant's computer with hard drive, 131 CDs, and the Kodak digital camera with memory card. The computer and CDs were taken from the house for an off-the-premises examination. (*Id.*) Movant was arrested the same day as the search of his home, and he did not make a post-arrest statement. (*Id.* at 4)

Later, the NCCPD detectives completed forensic examination of Movant's computer hard drive and discovered that it was virtually filled to capacity with photo images and videos. (D.I. 81 at 3 n.4) Approximately ninety percent of that material constituted child pornography, with approximately one-half of the child porn depicting pre-pubescent children engaged in the lascivious exhibition of the genitals and hard core sex acts. Movant's hard drive contained more than 100,000 photos and 500 videos of child pornography, all downloaded from the internet. (*Id.*)

On February 26, 2008, the grand jury returned an eleven-count Indictment, which included four counts of receipt of child pornography by computer (18 U.S.C. § 2252A(a)(2) & (b)(1)), with each count carrying a maximum penalty of twenty years of incarceration and a minimum penalty of five years of incarceration. (D.I. 81 at 4) The remaining portion of the Indictment charged two counts of attempted distribution of child pornography (18 U.S.C.

§ 2252A(a)(1) & (b)(1)); possession of child pornography (18 U.S.C. § 2252A(a)(5)(B) & (b)(2)); two counts of attempted distribution of obscenity depicting children (18 U.S.C.

2

§ 1446A(a)(2)(A) & (B); § 2252A(b)(1)); receipt of obscenity depicting children (18 U.S.C.

§ 1446A(a)(2)(A) & (B)); and possession of obscenity depicting children (18 U.S.C.

§ 1446A(b)(2)(A) & (B); § 2252A(b)(2)). (*Id.* at n.6, n.7) Although all of the numerous images and videos of child pornography found on Movant's computer hard drive had been downloaded by him off of the internet, Respondent included in the Indictment just four specific instances of such receipt.

On June 4, 2008, approximately three months after the Indictment was returned, the NCCPD detective examined Movant's CDs, which included the approximately twenty CDs containing the child pornographic images Movant had recorded of Jane Doe I and Jane Doe II. (D.I. 81 at 5) In the background of the child pornography images of Jane Doe I, the detective recognized Movant's New Castle house, specifically, his bedroom and its furnishings, which the detective had observed during the search of the house. The Federal Bureau of Investigation ("FBI") joined the investigation soon thereafter. (*Id.*)

On June 16, 2008, FBI agents obtained a search warrant from this Court for Movant's house. (D.I. 81 at 5) The next day investigators executed the warrant and seized from Movant's bedroom the furniture and objects depicted in the relevant photographs of Jane Doe I. (*Id.*)

On June 24, 2008, the grand jury returned a thirty-six count Superseding Indictment against Movant, charging him with numerous child pornography related offenses, including several counts of inducing a minor to engage in sexually explicit conduct and crossing a state line to engage in a sexual act with a minor. (D.I. 20; D.I. 23; *see also Phillips*, 396 F. App'x 831, 832 (3d Cir. 2010)) On March 31, 2009, Movant pled guilty to Count Sixteen of the Superseding Indictment, which charged him with production of child pornography, a violation of 18 U.S.C. § 2251(a). (D.I. 47) Pursuant to the Plea Agreement, Movant also entered a guilty plea to a one-count Information charging him with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) as

3

charged in Criminal Action No. 09-36-LPS. (D.I. 47 in Cr. A. No. 08-31; D.I. 3 in Cr. A. No. 09-36) On February 10, 2009, the Honorable Joseph J. Farnan, Jr. sentenced Movant to 360 months imprisonment on Count Sixteen of the Superseding Indictment in Cr. A. No. 08-31, and to 120 months imprisonment on Count One of the Felony Information in Cr. A. No. 09-36, with the sentences to run concurrently with one another. (D.I. 65)

Movant appealed, and the United States Court of Appeals for the Third Circuit affirmed his conviction on October 7, 2010. *See Phillips*, 396 F. App'x. at 835. Movant did not seek *certiorari* review.

In October 2011, Movant filed the pending § 2255 Motion. (D.I. 73) The case was then re-assigned to the undersigned's docket. Respondent filed a Reply in Opposition. (D.I. 81)

## III. DISCUSSION

Movant timely filed his *pro se* § 2255 Motion, asserting seven claims that counsel provided ineffective assistance with respect to the plea process and appeal stage.[2] (D.I. 73; D.I. 79) Respondent contends that the claims should be denied as meritless.

Movant has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, Movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.*

---

[2]Movant's original form § 2255 motion asserts one ineffective assistance of counsel claim with five sub-arguments, and one claim asserting a violation of the Tenth Amendment. (D.I. 73) However, Movant subsequently filed a letter amending that Motion to assert seven ineffective assistance of counsel allegations, one of which is based on his former Tenth Amendment argument. (D.I. 79) Thus, the Court construes the Motion as asserting seven ineffective assistance of counsel claims.

4

Under the second *Strickland* prong, Movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *See id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). In the context of a guilty plea, a Movant 1satisfies *Strickland's* prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A court can choose to address the prejudice prong before the deficient performance prong, and may reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced. *See Strickland*, 466 U.S. at 668. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id.* at 689.

## A. Claim One: Counsel's Failure To Communicate Initial Plea Offer

In his first claim, Movant contends that his counsel provided ineffective assistance by failing to tell him of an "early plea offered by the Government for a twenty year max sentence until after the plea was signed." (D.I. 73 at 3; D.I. 79 at 1) The facts surrounding this allegation are as follows. On April 3, 2008, Respondent forwarded to defense counsel a Memorandum of Plea Agreement with a cover letter. (D.I. 81 at A-1 to A-5) The plea offer was to Count Three of the Indictment, charging receipt of child pornography by computer, and carried a maximum penalty of twenty years of incarceration and a minimum penalty of five years of incarceration. Respondent's cover letter to defense counsel stated that the "offer will be revoked if not accepted by Monday, April 14, 2008. Please contact me if that deadline does not give you enough time to meet with your client." (D.I. 81 at A-1) The plea offer lapsed without defense counsel requesting an extension of the April 14, 2008 deadline.

On or about June 4, 2008, approximately two months after the lapse of the plea offer, the NCCPD detective discovered the child pornography images of Jane Doe I and Jane Doe II on

twenty of the 141 CDs that had been taken from Movant's house on September 19, 2007. (D.I. 81 at 5) This discovery eventually led to the involvement of the FBI and the return of the thirty-six count Superseding Indictment charging Movant with numerous child pornography related offenses. (*Id.; see also* D.I. 23) Movant pled guilty to an offer that carried a maximum sentence of forty years of incarceration, and the Court imposed a sentence of thirty years of incarceration. (D.I. 47; D.I. 65; D.I. 71)

Recently, in *Missouri v. Frye*, the United States Supreme Court opined that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012). Consequently, defense counsel's performance is deficient if he allows a formal "offer to expire without advising the defendant or allowing him to consider it." *Id.*

Pursuant to *Frye* and its companion case, *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012), a defendant establishes "prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance" by demonstrating the following factors: (1) a reasonable probability that he "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel;" (2) a reasonable probability that the prosecution would not have withdrawn the offer in light of intervening circumstances; (3) the trial court would have accepted the plea agreement; and (4) a reasonable probability "that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 132 S.Ct at 1409-11; *see also Lafler*, 132 S.Ct. at 1385. In *Frye*, the issue of intervening circumstances arose because Frye committed a new offense of driving without a license after the initial plea offer. The *Frye* Court noted that this new offense provided a "reason to doubt that the prosecution would have adhered to the agreement or that the trial court would have accepted it . . . unless they were required by state law to do so," and then concluded that there

6

would be no *Strickland* prejudice if Frye failed to "show a reasonable probability the prosecutor would have adhered to the [original plea] agreement." *Id.* at 1411.

After reviewing Movant's instant argument within the framework established by *Frye* and *Lafler*, the Court concludes that Movant has failed to demonstrate that he was prejudiced by counsel's failure to communicate the initial plea offer. First, Movant does not assert that he would have accepted the initial plea offer if it had been timely communicated to him by counsel. Second, the June 4, 2008 discovery of the child pornography in the twenty CDs of the minor victims constituted an intervening circumstance that resulted in the Superseding Indictment charging Movant with production of child pornography. Because production of child pornography is a more serious offense than the original offense of receipt of child pornography, Movant cannot demonstrate a reasonable probability that Respondent would not have withdrawn the initial plea offer after discovering the intervening circumstances. Consequently, Movant cannot demonstrate a reasonable probability that the initial plea offer would have been presented to the Court,[3] which, in turn, means that he cannot demonstrate a reasonable probability that the end result of the criminal process would have been more favorable but for counsel's failure to communicate the initial plea offer.

Accordingly, the Court concludes that Movant's first allegation of ineffective assistance is meritless.

---

[3]Additionally, during the sentencing hearing, Judge Farnan characterized the intervening circumstances involving Jane Doe I and Jane Doe II as "horrendous." Judge Farnan expressed concern about additional issues involving the conduct displayed in the photographs, as well as the lack of state prosecution for that conduct. (D.I. 67 at 35) Given these circumstances, Movant cannot demonstrate a reasonable probability that the Court would have accepted the initial plea offer even had it been presented to the Court.

7

**B. Claim Two: Counsel's Inadequate Representation During Sentencing**

On November 18, 2009, Movant was sentenced to 360 months imprisonment for production of child pornography and possession of child pornography. (D.I. 65) Movant contends that "counsel didn't sufficiently highlight to the court [his] medical and physical disabilities" or mention the fact that Movant was going through a bad divorce when arguing for a lesser sentence at the sentencing hearing. This argument is unavailing.

First, Movant does not specify the psychological, medical, and physical disabilities defense counsel failed to highlight. Second, prior to sentencing, defense counsel arranged for a complete mental health evaluation of Movant. The results of the evaluation were detailed in the presentence report, and the sentencing transcript demonstrates that Judge Farnan considered those results in determining Movant's sentence. (D.I. 67 at 31) Finally, and most importantly, defense counsel addressed Movant's mental history and condition with specificity during the sentencing hearing. (D.I. 67 at 11-12) For instance, counsel stated,

> I point out, and the evidence – testing bares this out, that through absolutely no fault of his own, Mr. Phillips was a mentally and emotionally injured soul from childhood. Lifetime symptoms included depression, anxiety, social fears, sleep disorders, nervousness, and low, or virtually non-existent self-esteem.

(*Id.* at 10) Counsel then provided numerous examples of Movant's psychological, medical, and physical disabilities, at one point stating that Movant has been diagnosed with "depression, bipolar disorder, anxiety, and most recently a major depressive disorder, dysthemic disorder, and an avoidant personality disorder." (*Id.* at 10-13) Notably, the sentencing transcript reveals that Judge Farnan considered Movant's psychological issues and his divorce when determining Movant's sentence, as demonstrated by Judge Farnan's statement that Movant

> has experienced bouts of depression and periods of alcohol abuse following a divorce from his wife, the mother of the victim he molested. But he has no other significant history that could explain this disturbing behavior that he engaged in.

8

*(Id. at 41)*

After viewing this record in conjunction with Movant's vague complaint, the Court concludes that Movant has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness or a reasonable probability that he would have received a lower sentence if counsel had "sufficiently" highlighted Movant's psychological issues and difficult divorce. As such, the Court will deny Claim Two as meritless.

## C. Claim Three: Counsel's Status As A Parent

Next, Movant argues that his "lawyer was unable to represent [him] effectively because of his young children" and the fact that the charges were all related to child pornography. (D.I. 73 at 3) Movant offers no evidence of how counsel's status as the father of young children prevented counsel from effectively representing him. As such, the Court will deny this contention as meritless.

## D. Claim Four: Counsel's Failure To Challenge Interstate Commerce Element

Movant contends that counsel was ineffective for telling him that he "couldn't contest the production [of child pornography] charge even though it didn't involve interstate commerce." (D.I. 73 at 3) In his amendment, Movant asserts that counsel "didn't investigate that there was no interstate commerce involved in the crime and that the state had to prove [there] was." (D.I. 79) Viewed together, these statements appear to allege that counsel was ineffective for failing to argue that Respondent had to prove the visual depictions were actually transported to another state in order for him to be convicted of production of child pornography. For the following reasons, the Court concludes that this argument lacks merit.

In this case, Movant was charged with production of child pornography pursuant to 18 U.S.C. § 2251(a), which reads, in pertinent part:

> Any person who employs, uses, persuades, induces, entices, or coerces, any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under section (e), . . . if that visual depiction was

9

produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means . . . .

In turn, Count Sixteen of the Superseding Indictment, charged that

On or about [November 1, 2003, through on or about September 13, 2004], in the District of Delaware, William A. Phillips, the defendant, did use, persuade, induce, and entice a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, to wit: digital files depicting Jane Doe #1, a female minor, engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2)(A), **which depictions were produced using materials that had been transported in interstate commerce and foreign commerce to Delaware[.]** All in violation of Title 18, United States Code, Section 2251(a).

(D.I. 23) (emphasis added)

The Third Circuit has consistently recognized that Federal criminal statutes prohibiting intra-state possession of child pornography and the distribution, use, and/or production of child pornography are a proper exercise of Congressional authority under the Commerce Clause. *See United States v. MacEwan*, 445 F.3d 237, 245-56 (3d Cir. 2006); *United States v. Rodia*, 194 F.3d 465, 478-79 (3d Cir. 1999) (intra-state possession). As such, under the plain language of 18 U.S.C. § 2251(a), the interstate commerce element for the offense of producing child pornography may be satisfied by proof that the child pornography was produced using materials that had been transported in interstate or foreign commerce; the government need not prove that the visual depictions themselves were transported through interstate commerce. *See United States v. Cramer*, 213 F. App'x 138, 141-42 (3d Cir. 2007) (18 U.S.C. § 2251(b)); *Rodia*, 194 F.3d at 478-79 (18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2)); *see also United States v. Grzybowicz*, 747 F.3d 1296, 1306 (11th Cir. 2014).

In this case, the materials used by Movant to produce the visual depictions of child pornography were manufactured outside the State of Delaware and, therefore, had to be transported to Delaware in order to be available for Movant's use. These circumstances demonstrate that Respondent established the interstate element of § 2251(a). Thus, counsel did not provide

10

ineffective assistance by failing to raise a meritless argument. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

The Court acknowledges that Movant may be attempting to argue that counsel was ineffective because he failed to adequately advise Movant about the interstate commerce element of production of child pornography offense to which he pled guilty. This contention is belied by the record. The Plea Agreement Movant entered into on March 31, 2009 (D.I. 47) defined the interstate commerce element for production of child pornography as "the visual depiction traveled in interstate or foreign commerce or was produced using materials that had been transported in interstate or foreign commerce." (D.I. 47 at 2) Moreover, during the change of plea hearing, the issue of the interstate commerce element and how it related to Count Sixteen was specifically discussed by the Court, defense counsel, and Movant:

> COURT: In the Plea Agreement it says that there are certain elements – this is in paragraph two on page two, that have to be met for you to ever be -- to plead guilty, or for you to ever be convicted of this offense. It says that you acted knowingly, that you did use, persuade or induce a minor to engage in sexually explicit conduct, that is actual or simulated sex acts or the lascivious exhibition of genitals or pubic area, that you for the purpose of producing a visual depiction of such conduct – that was all for the purpose of producing a visual depiction, and the visual depiction traveled in interstate or foreign commerce, **or was produced using materials that have been transported in interstate or foreign commerce. Do you understand those are the elements?**

> MOVANT: **Yes, your Honor.** I took pictures of a child. I realized it was wrong.

> COURT: You don't contest the part about interstate commerce or foreign commerce, in other words, either the visual depiction that you produced **or the materials used to produce it, traveled in interstate commerce? That means they went across a state border.**

> DEFENSE COUNSEL: Your Honor, may I just clarify? **The way it's been explained to Mr. Phillips is that the materials used to produce those images were transported in interstate or foreign commerce, not that the depictions themselves had been transported in interstate or foreign commerce.**

> COURT: **You understand that?**

> MOVANT: **Yes.**

11

        *        *        *

COURT:      I'm going to ask the prosecutor to tell me what evidence the government has that they would be prepared to use against you both as to the Information Count and the Indictment Count. I'll ask you to listen carefully, because at the end I'm going to ask you if you contest any of that evidence that they are going to proffer to me.

        *        *        *

GOVERNMENT:     Were the case to go to trial, the government would present testimony from New Castle County Police Department investigators. They would indicate that in August of 2007, they were conducting a child pornography investigation online. They were using a file-sharing program, the investigator would type in search words indicative of child pornography, and they found a computer that had child pornography on it. Through subpoenas, the investigator ultimately traced that computer to the defendant's residence in New Castle.     They executed a search warrant on September the 19th, 2007, at the defendant's New Castle residence and they found a Hewlett Packard computer, a Kodak DC 3200 digital camera and they also found in excess of 20 CD's. **All of that equipment was manufactured outside of the State of Delaware.**

        *        *        *

Then a computer forensic examination was later conducted by the New Castle County Police Department, and the investigator found more than 500 images, 500 videos of child pornography and more than 100,000 images – picture images of child pornography.

        *        *        *

Together with the computer, as I said, there was in excess of 20 CDs that were found. When the investigators went to the CDs, they found approximately 15 to 20 CDs of child pornography, but they [ ] recognized the child, Jane Doe I from the pictures as well.

        *        *        *

Among these CDs of Jane Doe were several hundred pictures including pictures where Jane Doe is depicted in a lascivious exhibit of the genitals and the pubic area and also engaged in sex acts. The investigator was able to determine from the forensic evidence that the image was taken with a Kodak DC 3200 digital camera, same type of camera that was taken from Mr. Phillip's residence. The investigator concluded that the images had been taken with that **Kodak camera transferred into the Hewlett Packard computer, again, which is also manufactured outside of Delaware and then downloaded on to the CD's, also manufactured outside of the State of Delaware.**

(D.I. 71 at 9-16) (emphasis added)

"Solemn declarations in open court carry a strong presumption of verity" that creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). A plain reading of the change of plea hearing transcript indicates that Movant's counsel and the Court fully explained to him the nature of the interstate commerce element, and the Court accepted Movant's representation that he understood. Movant does not dispute the record of his plea colloquy, nor does Movant offer any additional facts that contradict it. Thus, Movant's unsupported allegations in this proceeding fail to provide compelling evidence as to why the statements he made during the plea colloquy regarding his understanding of the interstate commerce element of his offense and his satisfaction with counsel's performance should not be presumptively accepted as true.

Accordingly, the Court will deny Claim Four because it lacks merit.

## F. Claim Five: Counsel's Failure To Assert Issue Of State Sovereignty

In his next claim, Movant cites to *Bond v. United States*, 131 S.Ct. 2355 (2011), and argues that the Federal government violated his Tenth Amendment rights by interfering with the "sovereignty of the state." (D.I. 73 at 4-5; D.I. 79 at 1) Movant also contends that Respondent lacked probable cause to take the case from state jurisdiction. (D.I. 73 at 4-5; D.I. 79 at 1) Although not entirely clear, Movant appears to assert two related Tenth Amendment arguments in Claim Five: (1) counsel should have argued that Congress lacked authority to enact the child pornography statutes under which he was convicted (18 U.S.C. § 2251(a) and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2)); and (2) the Federal government did not have the authority to investigate him and prosecute him in Federal court. Both of these arguments lack merit.

As an initial matter, aside from establishing Movant's standing to raise a Tenth Amendment challenge, *Bond* is unrelated to Movant's case and does not provide any substantive support for the contentions in Claim Five. In *Bond*, the Supreme Court held that an individual indicted for violating

13

a federal statute may "challenge its validity on grounds that, by enacting it, Congress exceeded its powers under the [Tenth Amendment of the] Constitution, thus intruding upon the sovereignty and authority of the States." *Bond*, 131 S.Ct. at 2360. However, the *Bond* Court explicitly refrained from expressing a view on the merits of the Tenth Amendment argument raised by the defendant. *See id.* at 2367. Therefore, Movant's reliance on *Bond* does not support his ineffective assistance of counsel claim.

The Court also concludes that Movant's two underlying Tenth Amendment arguments lack merit. The Third Circuit has consistently recognized the Federal child pornography statutes as valid exercises of Congressional authority under the Commerce Clause. *See Cramer*, 213 F. App'x at 141-42; *MacEwan*, 445 F.3d at 245-56; *Rodia*, 194 F.3d at 478-79. Therefore, even if counsel had argued that the Federal child pornography statutes at issue in this case were enacted in violation of the Tenth Amendment, this constitutional challenge would have been futile. As such, counsel did not provide ineffective assistance by failing to raise this meritless argument. *See 1Sanders*, 165 F.3d at 253.

Movant's second contention – that counsel should have challenged Respondent's prosecution of him in federal court as violating Delaware's sovereign right under the Tenth Amendment to have exclusive criminal jurisdiction over any proceedings against him – is similarly unavailing. There was no Tenth Amendment violation. Pursuant to 18 U.S.C. § 3231, the "district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." As just explained, Congress criminalized the possession of child pornography by its authority under the Commerce Clause. Movant's indictment charged him with violating two Federal child pornography statutes. Consequently, the Court possessed jurisdiction over Movant's case. Thus, defense counsel did not provide ineffective assistance by failing to raise this meritless argument. *See Sanders*, 165 F.3d at 253.

14

Accordingly, the Court will deny Claim Five as meritless.

## G.     Claim Six: Counsel's Failure To Challenge Search Warrants

In his amendment, Movant states that "[counsel] didn't argue enough about the four times that they tried to receive evidence for a search warrant never received a thing had no just cause to receive a warrant." (D.I. 79 at 2) The record reveals that defense counsel challenged the search warrant in a motion to suppress evidence on the basis that the warrant affidavit lacked probable cause. (D.I. 16 at 3) Respondent filed a response, detailing how probable cause for the warrant was established when the NCCPD detective conclusively identified child pornography on Movant's computer hard drive through the use of digital fingerprints of known child pornography files. (D.I. 38 at 3-4) Before the Court could rule on Movant's suppression motion, Movant agreed to enter into a plea agreement to the Superseding Indictment. Considering that counsel filed a suppression motion, the Court construes movant's contention that counsel did not "argue enough" about the "four times that they tried to receive evidence for a search warrant" as alleging that counsel's suppression motion failed to stress certain deficiencies in the affidavit of probable cause.

Movant's vague assertion of ineffective assistance is unavailing. First, Movant fails to demonstrate a reasonable probability that the suppression motion would have been granted if counsel had presented either a different or more vehement argument. Second, once Movant agreed to enter the plea agreement, counsel had no reason to pursue the suppression motion. Finally, Movant does not contend that he would not have pled guilty and would have proceeded to trial but for counsel's failure to "argue enough" in the suppression motion. For all of these reasons, the Court concludes that Claim Six lacks merit.

15

### H. Claim Seven: Appellate Representation

In his final claim, Movant states that he "was told to take this plea and we could appeal it. Then [defense counsel] studied the laws some more and decided we couldn't. Then [defense counsel] withdrew from being my counsel." (D.I. 73 at 3) In his amendment, Movant asserts

> [counsel] told me that I should accept the plea I signed saying all its contents were normal for a plea deal and that we could still appeal it on other grounds like the one book rule. After I had accepted it, [counsel] said he had to go study up on the grounds for appealing it. [Counsel] decided that we couldn't appeal it and then resigned as my lawyer.

(D.I. 79 at 1) The Court liberally construes these statements to present a double-layered ineffective assistance of counsel claim. First, Movant appears to contend that counsel's act of filing an *Anders* brief and a motion to withdraw as counsel constituted ineffective assistance in and of itself. Second, Movant appears to contend that counsel was ineffective because he did not immediately understand the scope of the appellate waiver and subsequently determined that there were no meritorious issues to raise on appeal. For the following reasons, the Court concludes that neither of these interpretations warrants relief.

#### 1. Filed *Anders* Brief and Motion to Withdraw

Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal are strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Smith v. Robbins*, 528 U.S. 259, 272 (2000); *Jones v. Barnes*, 463 U.S. 745 (1983). 1Recognizing that an attorney is "under an ethical obligation to refuse to prosecute a frivolous appeal," the Supreme Court has held that an attorney may withdraw from representing a client on appeal, so long as the attorney follows a procedure that "affords adequate and effective appellate review to [the] indigent defendant[]" and therefore "reasonably ensures that an indigent appeal will be resolved in a way that is related to the merit of that appeal."

*Smith*, 528 U.S. at 272, 276-77. In *Anders v. California*, 386 U.S. 738 (1967),[4] the United States Supreme Court articulated a procedure designed to protect an indigent appellant's constitutional rights when his attorney moves to withdraw. Pursuant to *Anders*, defense counsel must conduct a "conscientious examination" of the case before seeking to withdraw from the case, and then file an appellate brief "referring to anything in the record that might arguably support the appeal." *Id.* at 744. The defendant must be given a copy of counsel's brief and given an opportunity to raise any points he wishes. *Id.* Then, the appellate court must conduct a "full examination of all the proceedings to decide whether the case is wholly frivolous." *Id.* "If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied." *Id.* at 741-42; *see also McCoy v. Ct. App. of Wisconsin, Dist. 1*, 486 U.S. 429, 442 (1988).

The record in this case reveals that counsel followed the proper procedure for withdrawal under *Anders*. Defense counsel filed a timely notice of appeal, along with an *Anders* brief raising the following three issues: (1) did the Court have jurisdiction to consider this case; (2) did the plea colloquy violate the Federal Rules of Criminal Procedure; and (3) did the Court use the wrong version of the United States Sentencing Guidelines Manual. *See Phillips*, 396 F. App'x at 833. Defense counsel addressed each of these arguments in his *Anders* Brief, and determined that further argument on these issues would be frivolous. The Third Circuit conducted its own independent review of the record, determined that counsel made a conscientious examination of the record before moving to withdraw, and concluded that Movant's appeal was wholly without merit. *See Phillips*, 396 F. App'x at 833-35. Given these circumstances, the Court cannot conclude that counsel

---

[4]Although the *Smith* Court acknowledged that there may be procedures other than the one articulated in *Anders*, *Anders* is still good law. *See Smith*, 528 U.S. at 273.

provided ineffective assistance by filing a non-merits appellate brief under *Anders* and a motion to withdraw.

## 2. Initially Misunderstood Scope of Appellate Waiver

The Memorandum of Plea Agreement in this case contains the following appellate waiver:

> The defendant knows that he has, and voluntarily and expressly waives, the right to file any appeal, any collateral attack, or any other writ or motion after sentencing – including, but not limited to an appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, or a motion under 28 U.S.C. § 2255 – except that the defendant reserves his right to appeal only if (1) the Government appeals from the sentence, (2) the defendant's sentence exceeds the statutory maximum for the offense set forth in the United States Code, (3) the defendant claims his sentence unreasonably exceeds the Sentencing Guidelines range determined by the District Court in applying the United States Sentencing Guidelines, (4) the defendant claims his counsel was constitutionally ineffective, or (5) the defendant claims the Court determined his guidelines range under the wrong version of the United States Sentencing Guidelines Manual.

(D.I. 47 at ¶ 11)

In this case, even if defense counsel initially advised Movant there were issues to appeal and then, upon further review, decided that there were no appealable issues that fell outside the scope of limited appellate waiver, this conduct does not amount to ineffective assistance. Movant does not specify any argument defense counsel initially stated could be made on appeal, he does not identify any specific argument he believes fell outside the limited appellate waiver that counsel failed to raise on appeal, and he does not contend that he would not have pled guilty but would have proceeded to trial but for counsel's statement that there were appealable issues. Therefore, Movant's contention regarding counsel's allegedly initial inaccurate interpretation of the appellate waiver does not warrant relief.

The Court acknowledges that Movant may be attempting to argue that defense counsel was ineffective for advising him to accept the plea offer with the appellate waiver, or that counsel's alleged initial misunderstanding about the scope of the appellate waiver rendered his guilty plea unknowing and involuntary. The Court is not persuaded by either contention. Once again, the

18

Court notes Movant does not contend that he would not have pled guilty and would have proceeded to trial but for counsel's advice. Moreover, Movant does not allege, and the record does not reveal, that the appellate waiver was unknowing or involuntary. In fact, the change of plea colloquy demonstrates that the Court thoroughly explained the appellate waiver to Movant, that Movant stated he understood the rights he was waiving, and that Movant knowingly, voluntarily, and intelligently entered into the plea agreement despite the existence of the appellate waiver. (D.I. 71 at 22-25) During that same plea colloquy, Movant stated that he was satisfied with counsel's explanation of the appellate waiver and that counsel had answered any questions Movant had about the waiver. (*Id.* at 25-27) Finally, on appeal, counsel actually presented arguments that fell outside the scope of the appellate waiver; the fact that the Third Circuit found those arguments to be without merit does not in any way cast a shadow on counsel's advice to enter into a plea agreement containing such a waiver.

For all of these reasons, the Court will deny Movant's claim that counsel provided ineffective assistance on appeal.

## V. EVIDENTIARY HEARING

Section 2255 requires a district court to hold a prompt evidentiary hearing unless the "motion and the files and records of the case conclusively show" that the Movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Fed. R. Civ. P. 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that Movant is not entitled to relief. Therefore, the Court will deny Movant's § 2255 Motion without an evidentiary hearing.

## VI. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is

appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court is denying Movant's § 2255 motion after determining that his ineffective assistance of counsel claims lack merit. The Court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the Court will not issue a certificate of appealability.

## VII. CONCLUSION

For all of the foregoing reasons, the Court will dismiss Movant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence without an evidentiary hearing. Additionally, the Court will not issue a certificate of appealability. The Court shall issue an appropriate Order.